## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 8700
Washington, D.C. 20530,

     *Plaintiff*,

  v.

KNORR-BREMSE AG
Moosacher Str. 80
80809 München
Germany,

and

WESTINGHOUSE AIR BRAKE
TECHNOLOGIES CORPORATION
1001 Airbrake Avenue
Wilmerding, PA 15148,

     *Defendants*.

## COMPLAINT

The United States of America, acting under the direction of the Attorney General of the

United States, brings this civil antitrust action to obtain equitable relief against Defendants

Knorr-Bremse AG and Westinghouse Air Brake Technologies Corporation.  The United States

alleges as follows:

## I.   INTRODUCTION

1.      This action challenges under Section 1 of the Sherman Act, 15 U.S.C. § 1, a series
of unlawful agreements between three of the world's largest rail equipment suppliers to restrain
competition in the labor markets in which they compete for employees.

2.      Defendants Knorr-Bremse AG ("Knorr") and Westinghouse Air Brake
Technologies Corporation ("Wabtec") are each other's top competitors for rail equipment used in
freight and passenger rail applications.  They also compete with each other to attract, hire, and
retain various skilled employees, including rail industry project managers, engineers, sales
executives, business unit heads, and corporate officers.  Prior to its acquisition by Wabtec in
November 2016, Faiveley Transport S.A. ("Faiveley") also competed with Knorr and Wabtec to
attract, hire, and retain employees.

3.      The unlawful agreements between Knorr, Wabtec, and Faiveley included
promises and commitments not to solicit, recruit, hire without prior approval, or otherwise
compete for employees (collectively, "no-poach agreements").  The no-poach agreements were
not reasonably necessary to any separate, legitimate business transaction or collaboration
between the companies.  They spanned several years and were monitored and enforced by high-
level company executives, and had the effect of unlawfully allocating employees between the
companies, resulting in harm to U.S. workers and consumers.

4.      Beginning no later than 2009, senior executives at Knorr and Wabtec, including
executives at several of their U.S. subsidiaries, entered into no-poach agreements with one
another.  Beginning no later than 2011, senior executives at certain U.S. subsidiaries of Knorr
and Faiveley entered into a no-poach agreement with one another.  And beginning no later than

January 2014, senior executives at the U.S. passenger rail businesses of Wabtec and Faiveley entered into a no-poach agreement with one another.

5.      By entering into no-poach agreements, Knorr, Wabtec, and Faiveley substantially reduced competition for employees to the detriment of workers in this important U.S. industry. These no-poach agreements denied American rail industry workers access to better job opportunities, restricted their mobility, and deprived them of competitively significant information that they could have used to negotiate for better terms of employment.  Moreover, these no-poach agreements disrupted the efficient allocation of labor that comes from Knorr, Wabtec, and Faiveley competing for rail industry employees.

6.      Defendants' no-poach agreements are *per se* unlawful restraints of trade that violate Section 1 of the Sherman Act, 15 U.S.C. § 1.  The United States seeks an order prohibiting such agreements and other relief.

## II.      JURISDICTION AND VENUE

7.      Defendants Knorr and Wabtec develop, manufacture, and sell rail equipment into the United States.  In furtherance of each Defendant's U.S. business activities, Knorr and Wabtec recruit and hire skilled employees in the United States.  Such activities, including the employee recruiting and hiring activities that are the subject of this Complaint, are in the flow of and substantially affect interstate commerce.  The Court has subject matter jurisdiction under Section 4 of the Sherman Act, 15 U.S.C. § 4, and under 28 U.S.C. §§ 1331 and 1337, to prevent and restrain Defendants from violating Section 1 of the Sherman Act, 15 U.S.C. § 1.

8.      Defendants have consented to venue and personal jurisdiction in this district. Venue is proper in this district under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391.

### III.   DEFENDANTS

9.      Defendant Knorr is a privately-owned German company with its headquarters in Munich, Germany.  Knorr is a global leader in the development, manufacture, and sale of rail and commercial vehicle equipment.  In 2017, Knorr had annual revenues of approximately $7.7 billion.

10.     Knorr holds several wholly-owned subsidiaries in the United States.  Knorr Brake Company is a Delaware corporation with its headquarters in Westminster, Maryland.  It manufactures train control, braking, and door equipment used on passenger rail vehicles.  New York Air Brake Corporation is a Delaware corporation with its headquarters in Watertown, New York.  It manufactures railway air brakes and other rail equipment used on freight trains.  Knorr Brake Company and New York Air Brake Corporation are wholly-owned subsidiaries of Knorr.

11.     Defendant Wabtec is a Delaware corporation headquartered in Wilmerding, Pennsylvania.  With over 100 subsidiaries, Wabtec is the world's largest provider of rail equipment and services with global sales of $3.9 billion in 2017.  It is an industry leader in the freight and passenger rail segments of the rail industry.  Wabtec Passenger Transit is a business unit of Wabtec that develops, manufactures, and sells rail equipment and services for passenger rail applications.  It is based in Spartanburg, South Carolina.

12.     On November 30, 2016, Wabtec acquired Faiveley, which had been a French société anonyme based in Gennevilliers, France.  Before the acquisition, Faiveley was the world's third-largest rail equipment supplier behind Wabtec and Knorr.  Faiveley had employees in 24 countries, including at six U.S. locations.  It developed, manufactured, and sold passenger and freight rail equipment to customers in Europe, Asia, and North America, including the United States, with revenues of approximately €1.2 billion in 2016.  In the United States,

Faiveley conducted business primarily through Faiveley Transport North America, a wholly-owned subsidiary of Faiveley and a New York corporation headquartered in Greenville, South Carolina. Certain Faiveley recruiting activities conducted prior to its acquisition by Wabtec are at issue in this Complaint.

## IV.    TRADE AND COMMERCE

13.    Knorr and Wabtec (which now includes Faiveley) are the world's largest rail equipment suppliers and each other's top rival in the development, manufacture, and sale of equipment used in freight and passenger rail applications.

14.    Defendants also compete with one another and with firms at other tiers of the rail industry supply chain to attract, hire, and retain skilled employees by offering attractive salaries, benefits, training, advancement opportunities, and other favorable terms of employment.

15.    There is high demand for and limited supply of skilled employees who have rail industry experience. As a result, firms in the rail industry can experience vacancies of critical roles for months while they try to recruit and hire an individual with the requisite skills, training, and experience for a job opening. Employees of other rail industry participants, including the employees of Defendants' customers, competitors, and suppliers, are key sources of potential talent to fill these openings.

16.    Firms in the rail industry employ a variety of recruiting techniques, including using internal and external recruiters to identify, solicit, recruit, and otherwise help hire potential employees. Rail companies also receive direct applications from individuals interested in potential employment opportunities. Directly soliciting employees from another rail industry participant is a particularly efficient and effective method of competing for qualified employees. Soliciting involves communicating directly—whether by phone, e-mail, social and electronic

networking, or in person—with another firm's employee who has not otherwise applied for a job opening. Such direct solicitation can be performed by individuals of the company seeking to fill the position or by outside recruiters retained to identify potential employees on the company's behalf. Firms in the rail industry rely on direct solicitation of employees of other rail companies because those individuals have the specialized skills necessary and may be unresponsive to other methods of recruiting. In addition, the rail industry is an insular one in which employees at different firms form long-term relationships and often look to their professional networks to fill a vacancy.

17.    In a competitive labor market, rail industry employers compete with one another to attract highly-skilled talent for their employment needs. This competition benefits employees because it increases the available job opportunities that employees learn about. It also improves an employee's ability to negotiate for a better salary and other terms of employment. Defendants' no-poach agreements, however, restrained competition for employees and disrupted the normal bargaining and price-setting mechanisms that apply in the labor market.

## V.    THE UNLAWFUL AGREEMENTS

18.    Over a period spanning several years, Wabtec, Knorr, and Faiveley entered into similar no-poach agreements with one another to eliminate competition between them for employees. These agreements were executed and enforced by senior company executives and reached several of the companies' U.S. subsidiaries. The no-poach agreements were not reasonably necessary to any separate, legitimate business transaction or collaboration between the companies.

A.      **Wabtec – Knorr Agreements**

19.      Wabtec and Knorr entered into pervasive no-poach agreements that spanned

multiple business units and jurisdictions.  Senior executives at the companies' global

headquarters and their respective U.S. passenger and freight rail businesses entered into no-

poach agreements that involved promises and commitments not to solicit or hire one another's

employees.  These no-poach agreements primarily affected recruiting for project management,

engineering, sales, and corporate officer roles and restricted each company from soliciting

current employees from the other's company.  At times, these agreements were operationalized

as agreements not to hire current employees from one another without prior approval.

20.      Beginning no later than 2009, Wabtec's and Knorr Brake Company's most senior

executives entered into an express no-poach agreement and then actively managed it with each

other through direct communications.  For example, in a letter dated January 28, 2009, a director

of Knorr Brake Company wrote to a senior executive at Wabtec's headquarters, "[Y]ou and I

both agreed that our practice of not targeting each other's personnel is a prudent cause for both

companies.  As you so accurately put it, 'we compete in the market.'"  Although the no-poach

agreement was between Wabtec and Knorr's U.S. passenger rail subsidiary, it was well-known to

senior executives at the parent companies, including top Knorr executives in Germany who were

included in key communications about the no-poach agreement.  In furtherance of their

agreement, Wabtec and Knorr Brake Company informed their outside recruiters not to solicit

employees from the other company.

21.      In some instances, Wabtec and Knorr Brake Company's no-poach agreement

foreclosed the consideration of an unsolicited applicant employed by Wabtec or Knorr Brake

Company without prior approval of the other firm.  For example, in a 2010 internal

communication, a senior executive at Knorr Brake Company stated that he would not even consider a Wabtec candidate who applied to Knorr Brake Company without the permission of his counterpart at Wabtec.

22.     Wabtec and Knorr's no-poach agreements also reached the companies' U.S. freight rail businesses.  In July 2012, for example, a senior executive at New York Air Brake Corporation informed a human resources manager that he could not consider a Wabtec employee for a job opening due to the no-poach agreement between Wabtec and Knorr.

23.     Wabtec's and Knorr's senior executives actively policed potential breaches of their companies' no-poach agreements and directly communicated with one another to ensure adherence to the agreements.  For example, in February 2016, a member of Knorr's executive board complained directly to an executive officer at Wabtec regarding an external recruiter who allegedly solicited a Knorr Brake Company employee for an opening at Wabtec.  The Wabtec executive investigated the matter internally and reported back to Knorr that Wabtec's outside recruiter was responsible for the contact and that he had instructed the recruiter to terminate his activities with the candidate and refrain from soliciting Knorr employees going forward due to the existing no-poach agreement between the companies.

**B.     Knorr – Faiveley Agreement**

24.     Beginning no later than 2011, senior executives at Knorr Brake Company and Faiveley Transport North America reached an express no-poach agreement that involved promises and commitments to contact one another before pursuing an employee of the other company.  In October 2011, a senior executive at Knorr Brake Company explained in an e-mail to a high-level executive at Knorr-Bremse AG that he had a discussion with an executive at Faiveley's U.S. subsidiary that "resulted in an agreement between us that we do not poach each

other's employees. We agreed to talk if there was one trying to get a job[.]" Executives at Knorr Brake Company and Faiveley's U.S. subsidiary actively managed the agreement with each other through direct communications.

25. In or about 2012, a senior executive at Knorr Brake Company discussed the companies' no-poach agreement with an executive at Faiveley Transport North America. This discussion took place at a trade show in Berlin, Germany. Subsequently, the executives enforced the no-poach agreement with each other through direct communications. This no-poach agreement was known to other senior executives at the companies, who directly communicated with one another to ensure adherence to the agreement. For example, in October 2012, executives at Faiveley Transport North America stated in an internal communication that they were required to contact Knorr Brake Company before hiring a U.S. train brake engineer.

26. The companies continued their no-poach agreement until at least 2015. After Wabtec announced its proposed acquisition of Faiveley in July 2015, a high-level Knorr executive directed the company's recruiters in the United States and other jurisdictions to raid Faiveley for high-potential employees.

**C.     Wabtec – Faiveley Agreement**

27. Beginning no later than January 2014, senior executives at Wabtec Passenger Transit and Faiveley Transport North America entered into a no-poach agreement in which the companies agreed not to hire each other's employees without prior notification to and approval from the other company.

28. Wabtec Passenger Transit and Faiveley Transport North America executives actively managed and enforced their agreement with each other through direct communications. For example, in January 2014, Wabtec Passenger Transit executives refused to engage in hiring

discussions with a U.S.-based project manager at Faiveley Transport North America without first getting permission from Faiveley Transport North America executives.  In an internal e-mail to his colleagues, a Wabtec Passenger Transit executive explained that the candidate "is a good guy, but I don't want to violate my own agreement with [Faiveley Transport North America]." Only after receiving permission from Faiveley Transport North America did Wabtec Passenger Transit hire the project manager.  One month later, a Wabtec Passenger Transit senior executive informed his staff that hiring Faiveley Transport North America's employees was "off the table" due to the agreement with Faiveley Transport North America not to engage in hiring discussions with each other's employees without the other's prior approval.

29.     In July 2015, Wabtec and Faiveley publicly announced their intent to merge. Wabtec closed its acquisition of Faiveley on November 30, 2016.  Presently, Faiveley is a wholly-owned subsidiary of Wabtec.

## VI.    VIOLATION ALLEGED

30.     Defendants are direct competitors in certain labor markets for skilled rail industry employees, including project managers, engineers, sales executives, and corporate officers. Defendants entered into anticompetitive no-poach agreements that reduced competition in the labor markets in which they compete and, in doing so, disrupted the typical bargaining and negotiation between employees and employers that ordinarily would take place in these labor markets.

31.     Defendants' no-poach agreements were facially anticompetitive because they eliminated a significant form of competition to attract skilled labor in the U.S. rail industry. These agreements denied employees access to better job opportunities, restricted their mobility,

10

and deprived them of competitively significant information that they could have used to
negotiate for better terms of employment.

32.     Accordingly, Defendants' no-poach agreements constitute unreasonable restraints
of trade that are *per se* unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1.

## VII.    REQUEST FOR RELIEF

33.     The United States requests that this Court:

(a)     adjudge and decree that Defendants' no-poach agreements constitute *per
se* illegal restraints of trade and interstate commerce in violation of
Section 1 of the Sherman Act;

(b)     enjoin and restrain Defendants from enforcing or adhering to existing no-
poach agreements that unreasonably restrict competition for employees;

(c)     permanently enjoin and restrain each Defendant from establishing a no-
poach agreement except as prescribed by the Court;

(d)     award the United States such other relief as the Court may deem just and
proper to redress and prevent recurrence of the alleged violations and to
dissipate the anticompetitive effects of the illegal no-poach agreements
entered into by Defendants; and

(e)     award the United States the costs of this action.

Dated: April 3, 2018

Respectfully submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA

MAKAN DELRAHIM
Assistant Attorney General for Antitrust

ANDREW C. FINCH
Principal Deputy Assistant Attorney General

BERNARD A. NIGRO, JR.
(D.C. Bar #412357)
Deputy Assistant Attorney General

PATRICIA A. BRINK
Director of Civil Enforcement

MARIBETH PETRIZZI (D.C. Bar #435204)
Chief
Defense, Industrials, and Aerospace Section

DAVID E. ALTSCHULER (D.C. Bar #983023)
Assistant Chief
Defense, Industrials, and Aerospace Section

DOHA MEKKI*
DAN MONAHAN
GABRIELLA MOSKOWITZ (D.C. Bar #1044309)
 Trial Attorneys

United States Department of Justice
Antitrust Division
Defense, Industrials, and Aerospace Section
450 Fifth Street NW, Suite 8700
Washington, D.C. 20530
Telephone: (202) 598-8023
Facsimile: (202) 514-9033
Email: doha.mekki@usdoj.gov


*Lead Attorney to be Noticed

# CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

**I. (a) PLAINTIFFS**

UNITED STATES OF AMERICA
United States Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 8700
Washington DC 20530

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __11001__
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Doha Mekki
United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 8700
Washington, D.C. 20530
202-598-8023

**DEFENDANTS**

KNORR-BREMSE AG
("KNORR")
Moosacher Str. 80
80809 München
Germany

WESTINGHOUSE AIR BRAKE
TECHNOLOGIES CORPORATION
("WABTEC")
1001 Airbrake Avenue
Wilmerding, PA 15148

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __99999__
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

Mark Hamer, Esq.
Counsel for KNORR
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, D.C 20006
202-452-7077

Craig Waldman, Esq.
Counsel for WABTEC
Jones Day
555 California Street
San Francisco, CA 94104
415-875-5765

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- (●) 1 U.S. Government Plaintiff
- ( ) 2 U.S. Government Defendant
- ( ) 3 Federal Question (U.S. Government Not a Party)
- ( ) 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ( )1 | ( )1 | Incorporated or Principal Place of Business in This State | ( )4 | ( )4 |
| Citizen of Another State | ( )2 | ( )2 | Incorporated and Principal Place of Business in Another State | ( )5 | ( )5 |
| Citizen or Subject of a Foreign Country | ( )3 | ( )3 | Foreign Nation | ( )6 | ( )6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

(●) **A. Antitrust**

[X] 410 Antitrust

( ) **B. Personal Injury/ Malpractice**

- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Product Liability

( ) **C. Administrative Agency Review**

- [ ] 151 Medicare Act

**Social Security**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**Other Statutes**
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

( ) **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

( ) **E. General Civil (Other)** OR ( ) **F. Pro Se General Civil**

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 27 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Conditions
- [ ] 560 Civil Detainee – Conditions of Confinement

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent – Abbreviated New Drug Application
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**Other Statutes**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions
- [ ] 470 Racketeer Influenced & Corrupt Organization
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Section 1 of the Sherman Act, 15 U.S.C. § 1 - Unlawful agreements to restrain competition.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form |
|---|---|---|---|

DATE: _____April 3, 2018_____   SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI. CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.