UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       *Plaintiff,*<br>    v.<br><br>KNORR-BREMSE AG<br><br>and<br><br>WESTINGHOUSE AIR BRAKE<br>TECHNOLOGIES CORPORATION,<br><br>       *Defendants.* | 18cv 747 (CKK) |

## STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

1.      The Court has jurisdiction over the subject matter of this action and over each of the parties hereto; Defendants waive service of summons of the Complaint; and venue of this action is proper in the United States District Court for the District of Columbia.

2.      The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16, and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on each Defendant and by filing that notice with the Court.

.

3.      Defendants agree to arrange, at their expense, publication as quickly as possible of the newspaper notice required by the APPA, which shall be drafted by the United States in its sole discretion. The publication shall be arranged no later than three business days after the Defendants' receipt from the United States of the text of the notice and the identity of the newspaper within which the publication shall be made. Defendants shall promptly send to the United States (1) confirmation that publication of the newspaper notice has been arranged, and (2) the certification of the publication prepared by the newspaper within which the notice was published.

4.      Defendants shall abide by and comply with the provisions of the proposed Final Judgment, pending the proposed Final Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the signing of this Stipulation by the parties, comply with all the terms and provisions of the proposed Final Judgment. The United States shall have the full rights and enforcement powers in the proposed Final Judgment as though the same were in full force and effect as an order of the Court.

5.      This Stipulation shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

6.      In the event: (1) the United States has withdrawn its consent, as provided in Paragraph 2 above, or (2) the proposed Final Judgment is not entered pursuant to this Stipulation, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all

2

further obligations under this Stipulation, and the making of this Stipulation shall be without

prejudice to any party in this or any other proceeding.

    7.     The Defendants represent that the actions they are required to perform pursuant to

the proposed Final Judgment can and will be performed, and that the Defendants will later raise

no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to

modify any of the provisions contained therein.

Dated: April 3, 2018

Respectfully submitted,

FOR PLAINTIFF UNITED STATES:

_____
Doha Mekki
United States Department of Justice
Antitrust Division
Defense, Industrials, and Aerospace Section
450 Fifth Street N.W., Suite 8700
Washington, D.C. 20530
Telephone: (202) 598-8023
Facsimile: (202) 514-9033
doha.mekki@usdoj.gov

FOR DEFENDANT KNORR-BREMSE AG:

_____
Mark H. Hamer
Baker & McKenzie LLP
815 Connecticut Avenue, NW
Washington, DC 20006
Telephone: (202) 452-7077
Facsimile: (202) 416-7177
mark.hamer@bakermckenzie.com

FOR DEFENDANT WESTINGHOUSE AIR
BRAKE TECHNOLOGIES CORPORATION:

_____
Craig A. Waldman
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 875-5765
Facsimile: (415) 963-6813
cwaldman@jonesday.com

**ORDER**

IT IS SO ORDERED by this Court, this 5ᵗʰ day of

April.

United States District Judge

4

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

KNORR-BREMSE AG,

and

WESTINGHOUSE AIR BRAKE
TECHNOLOGIES CORPORATION,

*Defendants.*

## [PROPOSED] FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on April 3, 2018, alleging that Defendants Knorr-Bremse AG and Westinghouse Air Brake Technologies Corporation violated Section 1 of the Sherman Act, 15 U.S.C. § 1, the United States and the Defendants, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law;

AND WHEREAS, this Final Judgment does not constitute any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, the Defendants agree to be bound by the provisions of this Final Judgment pending its approval by this Court;

AND WHEREAS, the United States requires the Defendants to agree to undertake certain actions and refrain from certain conduct for the purpose of remedying the anticompetitive effects alleged in the Complaint;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.     JURISDICTION

This Court has jurisdiction over the subject matter and each of the parties to this action. The Complaint states a claim upon which relief may be granted against the Defendants under Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1.

## II.     DEFINITIONS

As used in this Final Judgment:

A.     "Knorr" and "Defendant" (when that term is applicable to Knorr) means Knorr-Bremse AG, a German corporation with its headquarters in Munich, Germany, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.     "Wabtec" and "Defendant" (when that term is applicable to Wabtec) means Westinghouse Air Brake Technologies Corporation, a Delaware corporation with its headquarters in Wilmerding, Pennsylvania, its successors and assigns, and its subsidiaries (including Faiveley Transport), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.  Wabtec acquired Faiveley Transport S.A., a French société anonyme based in Gennevilliers, France, on November 30, 2016.

C.     "Agreement" means any agreement, understanding, pact, contract, or arrangement, formal or informal, oral or written, between two or more persons.

2

D.      "HR Management" means directors, officers, and human resource employees of the Defendant who supervise or have responsibility for recruiting, solicitation, or hiring efforts affecting the United States.

E.      "No-Poach Agreement" or "No-Poach Provision" means any Agreement, or part of an Agreement, among two or more employers that restrains any person from cold calling, soliciting, recruiting, hiring, or otherwise competing for (i) employees located in the United States being hired to work in the United States or outside the United States or (ii) any employee located outside the United States being hired to work in the United States.

F.      "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office, or other business or legal entity, whether private or governmental.

G.      "Management" means all officers, directors, and board members of Knorr-Bremse AG or Westinghouse Air Brake Technologies Corporation, or anyone with management or supervisory responsibilities for Knorr's or Wabtec's U.S. business or operations.

### III.    APPLICABILITY

This Final Judgment applies to Knorr and Wabtec, and to all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

### IV.    PROHIBITED CONDUCT

Each Defendant is enjoined from attempting to enter into, entering into, maintaining, or enforcing any No-Poach Agreement or No-Poach Provision.

3

## V.    CONDUCT NOT PROHIBITED

A.    Nothing in Section IV shall prohibit a Defendant from attempting to enter into, entering into, maintaining, or enforcing a reasonable Agreement not to solicit, recruit, or hire employees that is ancillary to a legitimate business collaboration.

B.    All Agreements not to solicit, recruit, or hire employees described in Paragraph V(A) that a Defendant enters into, renews, or affirmatively extends after the date of entry of this Final Judgment shall:

      1.    be in writing and signed by all parties thereto;

      2.    identify, with specificity, the Agreement to which it is ancillary;

      3.    be narrowly tailored to affect only employees who are reasonably anticipated to be directly involved in the Agreement;

      4.    identify with reasonable specificity the employees who are subject to the Agreement; and

      5.    contain a specific termination date or event.

C.    Defendants shall not be required to modify or conform, but shall not enforce, any No-Poach Provision to the extent it violates this Final Judgment if the No-Poach Provision appears in a Defendant's agreement in effect as of the date of entry of this Final Judgment (or in effect as of the time a Defendant acquires a company that is a party to such an Agreement).

D.    Nothing in Section IV shall prohibit a Defendant from unilaterally deciding to adopt a policy not to consider applications from employees of another person, or to solicit, cold call, recruit, or hire employees of another person, provided that Defendants are prohibited from:

4

1. requesting, encouraging, proposing, or suggesting that any person other than the Defendant and its agents adopt, enforce, or maintain such a policy; or

2. notifying the other person that the Defendant has decided to adopt such a policy.

## VI. REQUIRED CONDUCT

A. Within ten (10) days of entry of this Final Judgment, each Defendant shall appoint an Antitrust Compliance Officer and identify to Plaintiff his or her name, business address, and telephone number.

B. Each Antitrust Compliance Officer shall:

1. within sixty (60) days of entry of the Final Judgment, furnish to all of the Defendant's Management and HR Management a copy of this Final Judgment, the Competitive Impact Statement, and a cover letter in a form attached as Exhibit 1;

2. within sixty (60) days of entry of the Final Judgment, in a manner to be devised by each Defendant and approved by the United States, provide the Defendant's U.S. employees reasonable notice of the meaning and requirements of this Final Judgment;

3. annually brief the Defendant's Management and HR Management on the meaning and requirements of this Final Judgment and the antitrust laws;

4. within sixty (60) days of such succession, brief any person who succeeds a person in any position identified in Paragraph VI(B)(3);

5.      obtain from each person designated in Paragraph VI(B)(3) or VI(B)(4), within sixty (60) days of that person's receipt of the Final Judgment, a certification that he or she (i) has read and, to the best of his or her ability, understands and agrees to abide by the terms of this Final Judgment; (ii) is not aware of any violation of the Final Judgment that has not been reported to the Defendant; and (iii) understands that any person's failure to comply with this Final Judgment may result in an enforcement action for civil or criminal contempt of court against the Defendant and/or any person who violates this Final Judgment;

6.      maintain (i) a copy of all Agreements covered by Paragraph V(A) and (ii) a record of certifications received pursuant to this Section;

7.      annually communicate to the Defendant's employees that they may disclose to the Antitrust Compliance Officer, without reprisal, information concerning any potential violation of this Final Judgment or the antitrust laws;

8.      within sixty (60) days of entry of the Final Judgment, furnish a copy of this Final Judgment, the Competitive Impact Statement, and a cover letter in a form attached as Exhibit 2 to all recruiting agencies or providers of temporary employees or contract workers retained by the Defendant for recruiting, soliciting, or hiring efforts affecting the Defendant's business activities in the United States at the time of entry of the Final Judgment or subsequently retained by the Defendant during the term of the Final Judgment; and

6

9.      furnish a copy of all materials required to be issued pursuant to Paragraph VI(B) to the United States within seventy-five (75) days of entry of the Final Judgment.

C.      Within thirty (30) days of entry of the Final Judgment, Defendants shall furnish notice of this action to the rail industry through (1) the placement of an advertisement, at the expense of Knorr and Wabtec equally, to be run in one monthly edition of an industry trade publication approved by the United States in a form approved by the United States prior to publication and containing the text of Exhibit 3, and (2) the creation of website pages linked to the corporate websites of Knorr and Wabtec, respectively, to be posted for no less than one (1) year after the date of entry of the Final Judgment, containing the text of Exhibit 3 and links to the Final Judgment, Competitive Impact Statement, and Complaint on the Antitrust Division's website.

D.      Each Defendant shall:

1.      upon Management or HR Management learning of any violation or potential violation of any of the terms and conditions contained in this Final Judgment, promptly take appropriate action to terminate or modify the activity so as to comply with this Final Judgment and maintain all documents related to any violation or potential violation of this Final Judgment;

2.      within sixty (60) days of Management or HR Management learning of any violation or potential violation of any of the terms and conditions contained in this Final Judgment, file with the United States a statement describing any violation or potential violation, which shall include a

7

description of any communications constituting the violation or potential violation, including the date and place of the communication, the persons involved, and the subject matter of the communication; and

3. have its CEO or CFO, and its General Counsel, certify to the United States annually on the anniversary date of the entry of this Final Judgment that the Defendant has complied with the provisions of this Final Judgment.

## VII.   DEFENDANTS' COOPERATION

A. Each Defendant shall cooperate fully and truthfully with the United States in any investigation or litigation examining whether or alleging that the Defendant entered into a No-Poach Agreement with any other person in violation of Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1. Each Defendant shall use its best efforts to ensure that all current and former officers, directors, employees, and agents also fully and promptly cooperate with the United States. The full, truthful, and continuing cooperation of each Defendant shall include, but not be limited to:

1. providing sworn testimony to the United States regarding each No-Poach Agreement between the Defendant and any other person;

2. producing, upon request of the United States, all documents and other materials, wherever located, not protected under the attorney-client privilege or the attorney work-product doctrines, in the possession, custody, or control of that Defendant, that relate to any No-Poach Agreement between that Defendant and any other person;

3. making available for interview any officers, directors, employees, and agents if so requested by the United States; and

8

4.   testifying at trial and other judicial proceedings fully, truthfully, and under

oath, subject to the penalties of perjury (18 U.S.C. § 1621), making a false

statement or declaration in court proceedings (18 U.S.C. § 1623),

contempt (18 U.S.C. §§ 401-402), and obstruction of justice (18 U.S.C. §

1503, *et seq.*) when called upon to do so by the United States;

5.   provided however, that the obligations of each Defendant to cooperate

fully with the United States as described in this Section shall cease upon

the conclusion of all the United States' investigations and the United

States' litigation examining whether or alleging that the Defendant agreed

to any No-Poach Agreement with any other person in violation of Section

1 of the Sherman Act, as amended, 15 U.S.C. § 1, including exhaustion of

all appeals or expiration of time for all appeals of any Court ruling in each

such matter.

B.   Subject to the full, truthful, and continuing cooperation of each Defendant, as

defined in Paragraph VII(A), the United States agrees that it will not bring any further civil

actions or criminal charges against that Defendant for any No-Poach Agreement with any other

person that:

1.   was entered into and terminated on or before the date of the filing of the

Complaint in this action;

2.   was disclosed to the United States before the date of the filing of the

Complaint in this action; and

3.   does not in any way constitute or include an agreement to fix wages,

compensation, or other benefits.

C.     The United States' agreement set forth in Paragraph VII(B) does not apply to any acts of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), contempt (18 U.S.C. §§ 401-402), or obstruction of justice (18 U.S.C. § 1503, *et seq.*) by the Defendant or its officers, directors, employees, and agents.

## VIII.  COMPLIANCE INSPECTION

A.     For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally-recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to each Defendant be permitted:

1.     access during each Defendant's office hours to inspect and copy, or at the option of the United States, to require each Defendant to provide electronic or hard copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of each Defendant, relating to any matters contained in this Final Judgment; and

2.     to interview, either informally or on the record, each Defendant's officers, employees, or agents, who may have counsel, including their individual counsel, present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by any Defendant.

B.      Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, each Defendant shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by a Defendant to the United States, the Defendant represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and the Defendant marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give the Defendant ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## IX.    RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

11

## X.    ENFORCEMENT OF FINAL JUDGMENT

A.    The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including its right to seek an order of contempt from this Court.  Defendants agree that in any civil contempt action, any motion to show cause, or any similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of the decree and the appropriateness of any remedy therefor by a preponderance of the evidence, and they waive any argument that a different standard of proof should apply.

B.    In any enforcement proceeding in which the Court finds that the Defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with such other relief as may be appropriate.  In connection with any successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved prior to litigation, that Defendant agrees to reimburse the United States for any attorneys' fees, experts' fees, and costs incurred in connection with that enforcement effort, including the investigation of the potential violation.

## XI.    EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire seven (7) years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and the Defendants that the continuation of the Final Judgment no longer is necessary or in the public interest.

## XII.   NOTICE

For purposes of this Final Judgment, any notice or other communication required to be provided to the United States shall be sent to the person at the address set forth below (or such other addresses as the United States may specify in writing to the Defendants):

Chief
Defense, Industrials, and Aerospace Section
U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8700
Washington, D.C. 20530

## XIII.   PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the Procedures of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this final judgment is in the public interest.

Date: _____

                                          Court approval subject to procedures
                                          of Antitrust Procedures and Penalties
                                          Act, 15 U.S.C. § 16


                                          _____
                                          United States District Judge

## EXHIBIT 1

[Company Letterhead]

[Name and Address of Antitrust Compliance Officer]

    Re:    *Agreements Not to Solicit Employees from Other Companies*

Dear [XX]:

I am providing you this notice regarding a judgment recently entered by a federal judge in Washington, D.C. affecting our employee recruiting, soliciting, and hiring practices. The judgment applies to our company and all of its employees, including you, so it is important that you understand the obligations it imposes on us. [CEO Name] has asked me to let each of you know that [s/he] expects you to take these obligations seriously and abide by them.

The judgment prohibits us from agreeing with any other employer not to solicit, cold call, or recruit each other's employees. This includes seeking permission or approval before considering or approaching an employee of the employer about a potential opportunity or requiring the other employer to seek permission or approval from us before considering or approaching one of our employees. There are limited exceptions to this restriction. You must consult me before determining whether a particular employer is subject to an exception under the judgment.

A copy of the court order is attached. Please read it carefully and familiarize yourself with its terms. The judgment, rather than the above description, is controlling. If you have any questions about the judgment or how it affects your recruiting and hiring activities, please contact me as soon as possible.

Thank you for your cooperation.

                                 Sincerely,
                                 [Defendant's Antitrust Compliance Officer]

14

**EXHIBIT 2**

[Company Letterhead]

[Name and Address of Antitrust Compliance Officer]

> Re:    *Agreements Not to Solicit Employees from Other Companies*

Dear [XX]:

I am providing you this notice regarding a judgment recently entered by a federal judge in Washington, D.C. affecting [Defendant's] employee recruiting, soliciting, and hiring practices. The judgment applies to [Defendant] and all of its employees, so it is important that you understand the obligations it imposes on your recruiting activities for [Defendant].  [CEO Name] has asked me to let you know that [s/he] expects you to take these obligations seriously and abide by them, irrespective of any contrary instructions you may receive from any other employee or officer of [Defendant].

The judgment prohibits [Defendant] from agreeing with another employer not to solicit, cold call, or recruit each other's employees.  This includes seeking permission or approval before considering or approaching an employee of the other employer about a potential opportunity or requiring the other employer to seek permission or approval from [Defendant] before considering or approaching one of [Defendant's] employees.   There are limited exceptions to this restriction. You must consult me before determining whether a particular employer is subject to an exception under the judgment.   If any employee of [Defendant] has asked or asks you to refrain from recruiting, cold calling, soliciting, or otherwise approaching an employee from a particular company, you must notify me immediately before doing so.

A copy of the court order is attached.  Please read it carefully and familiarize yourself with its terms. The judgment, rather than the above description, is controlling.  If you have any

15

questions about the judgment or how it affects your recruiting and hiring activities for

[Defendant], please contact me as soon as possible.

      Thank you for your cooperation.

                                                Sincerely,
                                                [Defendant's Antitrust Compliance Officer]

**EXHIBIT 3**

Please take notice that Knorr-Bremse AG (Knorr) and Westinghouse Air Brake
Technologies Corporation (Wabtec) have entered into a settlement with the United States
Department of Justice relating to their respective employee recruiting, solicitation, and hiring
practices.

On April 3, 2018, the United States filed a federal civil antitrust Complaint alleging that
Knorr and Wabtec entered into agreements that restrained cold calling, soliciting, recruiting,
hiring, or otherwise competing for employees (collectively, "no-poach agreements") in violation
of Section 1 of the Sherman Act, 15 U.S.C. § 1.  At the same time, the United States filed a
proposed settlement that prohibits each of Knorr and Wabtec from entering into, maintaining, or
enforcing no-poach agreements with another employer subject to limited exceptions. This
prohibition includes seeking permission or approval before considering, approaching, or hiring
an employee or requiring the other employer to seek permission or approval from Knorr and
Wabtec before considering or approaching one of their employees.

As part of its settlement with the United States, Knorr and Wabtec confirmed that each
company has unilaterally withdrawn from and will not enforce any prohibited no-poach
agreements it may have had with any other employer relating to employees located or being
hired to work in the United States.

The Final Judgment, which was recently entered by a federal district court, is effective
for seven years.  Copies of the Complaint, Final Judgment, and Competitive Impact Statement
are available at:

[Link to Complaint]
[Link to Final Judgment]
[Link to Competitive Impact Statement]

17