## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>KNORR-BREMSE AG,<br><br>and<br><br>WESTINGHOUSE AIR BRAKE<br>TECHNOLOGIES CORPORATION,<br><br>*Defendants.* |

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on April 3, 2018, alleging that Defendants Knorr-Bremse AG and Westinghouse Air Brake Technologies Corporation violated Section 1 of the Sherman Act, 15 U.S.C. § 1, the United States and the Defendants, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law;

AND WHEREAS, this Final Judgment does not constitute any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, the Defendants agree to be bound by the provisions of this Final Judgment pending its approval by this Court;

AND WHEREAS, the United States requires the Defendants to agree to undertake certain actions and refrain from certain conduct for the purpose of remedying the anticompetitive effects alleged in the Complaint;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

This Court has jurisdiction over the subject matter and each of the parties to this action. The Complaint states a claim upon which relief may be granted against the Defendants under Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1.

## II.    DEFINITIONS

As used in this Final Judgment:

A.    "Knorr" and "Defendant" (when that term is applicable to Knorr) means Knorr-Bremse AG, a German corporation with its headquarters in Munich, Germany, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.    "Wabtec" and "Defendant" (when that term is applicable to Wabtec) means Westinghouse Air Brake Technologies Corporation, a Delaware corporation with its headquarters in Wilmerding, Pennsylvania, its successors and assigns, and its subsidiaries (including Faiveley Transport), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.  Wabtec acquired Faiveley Transport S.A., a French société anonyme based in Gennevilliers, France, on November 30, 2016.

C.    "Agreement" means any agreement, understanding, pact, contract, or arrangement, formal or informal, oral or written, between two or more persons.

D.     "HR Management" means directors, officers, and human resource employees of the Defendant who supervise or have responsibility for recruiting, solicitation, or hiring efforts affecting the United States.

E.     "No-Poach Agreement" or "No-Poach Provision" means any Agreement, or part of an Agreement, among two or more employers that restrains any person from cold calling, soliciting, recruiting, hiring, or otherwise competing for (i) employees located in the United States being hired to work in the United States or outside the United States or (ii) any employee located outside the United States being hired to work in the United States.

F.     "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office, or other business or legal entity, whether private or governmental.

G.     "Management" means all officers, directors, and board members of Knorr-Bremse AG or Westinghouse Air Brake Technologies Corporation, or anyone with management or supervisory responsibilities for Knorr's or Wabtec's U.S. business or operations.

## III.    APPLICABILITY

This Final Judgment applies to Knorr and Wabtec, and to all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

## IV.    PROHIBITED CONDUCT

Each Defendant is enjoined from attempting to enter into, entering into, maintaining, or enforcing any No-Poach Agreement or No-Poach Provision.

## V.   CONDUCT NOT PROHIBITED

A.      Nothing in Section IV shall prohibit a Defendant from attempting to enter into, entering into, maintaining, or enforcing a reasonable Agreement not to solicit, recruit, or hire employees that is ancillary to a legitimate business collaboration.

B.      All Agreements not to solicit, recruit, or hire employees described in Paragraph V(A) that a Defendant enters into, renews, or affirmatively extends after the date of entry of this Final Judgment shall:

> 1.      be in writing and signed by all parties thereto;
>
> 2.      identify, with specificity, the Agreement to which it is ancillary;
>
> 3.      be narrowly tailored to affect only employees who are reasonably anticipated to be directly involved in the Agreement;
>
> 4.      identify with reasonable specificity the employees who are subject to the Agreement; and
>
> 5.      contain a specific termination date or event.

C.      Defendants shall not be required to modify or conform, but shall not enforce, any No-Poach Provision to the extent it violates this Final Judgment if the No-Poach Provision appears in a Defendant's agreement in effect as of the date of entry of this Final Judgment (or in effect as of the time a Defendant acquires a company that is a party to such an Agreement).

D.      Nothing in Section IV shall prohibit a Defendant from unilaterally deciding to adopt a policy not to consider applications from employees of another person, or to solicit, cold call, recruit, or hire employees of another person, provided that Defendants are prohibited from:

1.      requesting, encouraging, proposing, or suggesting that any person other
        than the Defendant and its agents adopt, enforce, or maintain such a
        policy; or

2.      notifying the other person that the Defendant has decided to adopt such a
        policy.

## VI.      REQUIRED CONDUCT

A.      Within ten (10) days of entry of this Final Judgment, each Defendant shall
appoint an Antitrust Compliance Officer and identify to Plaintiff his or her name, business
address, and telephone number.

B.      Each Antitrust Compliance Officer shall:

1.      within sixty (60) days of entry of the Final Judgment, furnish to all of the
        Defendant's Management and HR Management a copy of this Final
        Judgment, the Competitive Impact Statement, and a cover letter in a form
        attached as Exhibit 1;

2.      within sixty (60) days of entry of the Final Judgment, in a manner to be
        devised by each Defendant and approved by the United States, provide the
        Defendant's U.S. employees reasonable notice of the meaning and
        requirements of this Final Judgment;

3.      annually brief the Defendant's Management and HR Management on the
        meaning and requirements of this Final Judgment and the antitrust laws;

4.      within sixty (60) days of such succession, brief any person who succeeds a
        person in any position identified in Paragraph VI(B)(3);

5.      obtain from each person designated in Paragraph VI(B)(3) or VI(B)(4),

within sixty (60) days of that person's receipt of the Final Judgment, a

certification that he or she (i) has read and, to the best of his or her ability,

understands and agrees to abide by the terms of this Final Judgment; (ii) is

not aware of any violation of the Final Judgment that has not been

reported to the Defendant; and (iii) understands that any person's failure

to comply with this Final Judgment may result in an enforcement action

for civil or criminal contempt of court against the Defendant and/or any

person who violates this Final Judgment;

6.      maintain (i) a copy of all Agreements covered by Paragraph V(A) and (ii)

a record of certifications received pursuant to this Section;

7.      annually communicate to the Defendant's employees that they may

disclose to the Antitrust Compliance Officer, without reprisal, information

concerning any potential violation of this Final Judgment or the antitrust

laws;

8.      within sixty (60) days of entry of the Final Judgment, furnish a copy of

this Final Judgment, the Competitive Impact Statement, and a cover letter

in a form attached as Exhibit 2 to all recruiting agencies or providers of

temporary employees or contract workers retained by the Defendant for

recruiting, soliciting, or hiring efforts affecting the Defendant's business

activities in the United States at the time of entry of the Final Judgment or

subsequently retained by the Defendant during the term of the Final

Judgment; and

9.     furnish a copy of all materials required to be issued pursuant to Paragraph

VI(B) to the United States within seventy-five (75) days of entry of the

Final Judgment.

C.     Within thirty (30) days of entry of the Final Judgment, Defendants shall furnish

notice of this action to the rail industry through (1) the placement of an advertisement, at the

expense of Knorr and Wabtec equally, to be run in one monthly edition of an industry trade

publication approved by the United States in a form approved by the United States prior to

publication and containing the text of Exhibit 3, and (2) the creation of website pages linked to

the corporate websites of Knorr and Wabtec, respectively, to be posted for no less than one (1)

year after the date of entry of the Final Judgment, containing the text of Exhibit 3 and links to the

Final Judgment, Competitive Impact Statement, and Complaint on the Antitrust Division's

website.

D.     Each Defendant shall:

1.     upon Management or HR Management learning of any violation or

potential violation of any of the terms and conditions contained in this

Final Judgment, promptly take appropriate action to terminate or modify

the activity so as to comply with this Final Judgment and maintain all

documents related to any violation or potential violation of this Final

Judgment;

2.     within sixty (60) days of Management or HR Management learning of any

violation or potential violation of any of the terms and conditions

contained in this Final Judgment, file with the United States a statement

describing any violation or potential violation, which shall include a

description of any communications constituting the violation or potential

violation, including the date and place of the communication, the persons

involved, and the subject matter of the communication; and

3.    have its CEO or CFO, and its General Counsel, certify to the United States

annually on the anniversary date of the entry of this Final Judgment that

the Defendant has complied with the provisions of this Final Judgment.

## VII.   DEFENDANTS' COOPERATION

A.    Each Defendant shall cooperate fully and truthfully with the United States in any

investigation or litigation examining whether or alleging that the Defendant entered into a No-

Poach Agreement with any other person in violation of Section 1 of the Sherman Act, as

amended, 15 U.S.C. § 1. Each Defendant shall use its best efforts to ensure that all current and

former officers, directors, employees, and agents also fully and promptly cooperate with the

United States. The full, truthful, and continuing cooperation of each Defendant shall include, but

not be limited to:

1.    providing sworn testimony to the United States regarding each No-Poach

Agreement between the Defendant and any other person;

2.    producing, upon request of the United States, all documents and other

materials, wherever located, not protected under the attorney-client

privilege or the attorney work-product doctrines, in the possession,

custody, or control of that Defendant, that relate to any No-Poach

Agreement between that Defendant and any other person;

3.    making available for interview any officers, directors, employees, and

agents if so requested by the United States; and

8

4.  testifying at trial and other judicial proceedings fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making a false statement or declaration in court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of justice (18 U.S.C. § 1503, *et seq.*) when called upon to do so by the United States;

5.  provided however, that the obligations of each Defendant to cooperate fully with the United States as described in this Section shall cease upon the conclusion of all the United States' investigations and the United States' litigation examining whether or alleging that the Defendant agreed to any No-Poach Agreement with any other person in violation of Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1, including exhaustion of all appeals or expiration of time for all appeals of any Court ruling in each such matter.

B.  Subject to the full, truthful, and continuing cooperation of each Defendant, as defined in Paragraph VII(A), the United States agrees that it will not bring any further civil actions or criminal charges against that Defendant for any No-Poach Agreement with any other person that:

1.  was entered into and terminated on or before the date of the filing of the Complaint in this action;

2.  was disclosed to the United States before the date of the filing of the Complaint in this action; and

3.  does not in any way constitute or include an agreement to fix wages, compensation, or other benefits.

C.      The United States' agreement set forth in Paragraph VII(B) does not apply to any acts of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), contempt (18 U.S.C. §§ 401-402), or obstruction of justice (18 U.S.C. § 1503, *et seq.*) by the Defendant or its officers, directors, employees, and agents.

## VIII.   COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally-recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to each Defendant be permitted:

1.      access during each Defendant's office hours to inspect and copy, or at the option of the United States, to require each Defendant to provide electronic or hard copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of each Defendant, relating to any matters contained in this Final Judgment; and

2.      to interview, either informally or on the record, each Defendant's officers, employees, or agents, who may have counsel, including their individual counsel, present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by any Defendant.

B.     Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, each Defendant shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.     No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.     If at the time information or documents are furnished by a Defendant to the United States, the Defendant represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and the Defendant marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give the Defendant ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## IX.    RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## X.   ENFORCEMENT OF FINAL JUDGMENT

A.   The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including its right to seek an order of contempt from this Court. Defendants agree that in any civil contempt action, any motion to show cause, or any similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of the decree and the appropriateness of any remedy therefor by a preponderance of the evidence, and they waive any argument that a different standard of proof should apply.

B.   In any enforcement proceeding in which the Court finds that the Defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with such other relief as may be appropriate. In connection with any successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved prior to litigation, that Defendant agrees to reimburse the United States for any attorneys' fees, experts' fees, and costs incurred in connection with that enforcement effort, including the investigation of the potential violation.

## XI.   EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire seven (7) years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and the Defendants that the continuation of the Final Judgment no longer is necessary or in the public interest.

## XII.   NOTICE

For purposes of this Final Judgment, any notice or other communication required to be provided to the United States shall be sent to the person at the address set forth below (or such other addresses as the United States may specify in writing to the Defendants):

> Chief
> Defense, Industrials, and Aerospace Section
> U.S. Department of Justice
> Antitrust Division
> 450 Fifth Street, NW, Suite 8700
> Washington, D.C. 20530

## XIII.   PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the Procedures of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment and the Competitive Impact Statement. The United States received no public comments on the Final Judgment.   Based upon the record before the Court, which includes the Competitive Impact Statement, entry of this final judgment is in the public interest.

Date: _July 11, 2018_

> Court approval subject to procedures
> of Antitrust Procedures and Penalties
> Act, 15 U.S.C. § 16

_Colleen Kollar-Kotelly_
United States District Judge

## EXHIBIT 1

[Company Letterhead]

[Name and Address of Antitrust Compliance Officer]

      Re:    *Agreements Not to Solicit Employees from Other Companies*

Dear [XX]:

      I am providing you this notice regarding a judgment recently entered by a federal judge in Washington, D.C. affecting our employee recruiting, soliciting, and hiring practices. The judgment applies to our company and all of its employees, including you, so it is important that you understand the obligations it imposes on us. [CEO Name] has asked me to let each of you know that [s/he] expects you to take these obligations seriously and abide by them.

      The judgment prohibits us from agreeing with any other employer not to solicit, cold call, or recruit each other's employees. This includes seeking permission or approval before considering or approaching an employee of the employer about a potential opportunity or requiring the other employer to seek permission or approval from us before considering or approaching one of our employees. There are limited exceptions to this restriction. You must consult me before determining whether a particular employer is subject to an exception under the judgment.

      A copy of the court order is attached. Please read it carefully and familiarize yourself with its terms. The judgment, rather than the above description, is controlling. If you have any questions about the judgment or how it affects your recruiting and hiring activities, please contact me as soon as possible.

      Thank you for your cooperation.

                        Sincerely,
                        [Defendant's Antitrust Compliance Officer]

## EXHIBIT 2

[Company Letterhead]

[Name and Address of Antitrust Compliance Officer]

    *Re:*    *Agreements Not to Solicit Employees from Other Companies*

Dear [XX]:

    I am providing you this notice regarding a judgment recently entered by a federal judge in Washington, D.C. affecting [Defendant's] employee recruiting, soliciting, and hiring practices. The judgment applies to [Defendant] and all of its employees, so it is important that you understand the obligations it imposes on your recruiting activities for [Defendant]. [CEO Name] has asked me to let you know that [s/he] expects you to take these obligations seriously and abide by them, irrespective of any contrary instructions you may receive from any other employee or officer of [Defendant].

    The judgment prohibits [Defendant] from agreeing with another employer not to solicit, cold call, or recruit each other's employees. This includes seeking permission or approval before considering or approaching an employee of the other employer about a potential opportunity or requiring the other employer to seek permission or approval from [Defendant] before considering or approaching one of [Defendant's] employees. There are limited exceptions to this restriction. You must consult me before determining whether a particular employer is subject to an exception under the judgment. If any employee of [Defendant] has asked or asks you to refrain from recruiting, cold calling, soliciting, or otherwise approaching an employee from a particular company, you must notify me immediately before doing so.

    A copy of the court order is attached. Please read it carefully and familiarize yourself with its terms. The judgment, rather than the above description, is controlling. If you have any

questions about the judgment or how it affects your recruiting and hiring activities for

[Defendant], please contact me as soon as possible.

    Thank you for your cooperation.

                               Sincerely,
                               [Defendant's Antitrust Compliance Officer]

**EXHIBIT 3**

Please take notice that Knorr-Bremse AG (Knorr) and Westinghouse Air Brake Technologies Corporation (Wabtec) have entered into a settlement with the United States Department of Justice relating to their respective employee recruiting, solicitation, and hiring practices.

On April 3, 2018, the United States filed a federal civil antitrust Complaint alleging that Knorr and Wabtec entered into agreements that restrained cold calling, soliciting, recruiting, hiring, or otherwise competing for employees (collectively, "no-poach agreements") in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. At the same time, the United States filed a proposed settlement that prohibits each of Knorr and Wabtec from entering into, maintaining, or enforcing no-poach agreements with another employer subject to limited exceptions. This prohibition includes seeking permission or approval before considering, approaching, or hiring an employee or requiring the other employer to seek permission or approval from Knorr and Wabtec before considering or approaching one of their employees.

As part of its settlement with the United States, Knorr and Wabtec confirmed that each company has unilaterally withdrawn from and will not enforce any prohibited no-poach agreements it may have had with any other employer relating to employees located or being hired to work in the United States.

The Final Judgment, which was recently entered by a federal district court, is effective for seven years. Copies of the Complaint, Final Judgment, and Competitive Impact Statement are available at:

[Link to Complaint]
[Link to Final Judgment]
[Link to Competitive Impact Statement]